**FANCHON & MARCO, Inc., v. HAGEN-
BECK–WALLACE SHOWS CO.**

No. 9779.

Circuit Court of Appeals, Ninth Circuit.

Jan. 12, 1942.

Macfarlane, Schaefer, Haun & Mulford, James H. Arthur, and William Gamble, all of Los Angeles, Cal., for appellant.

Combs & Murphine, Lee Combs, and Thos. F. Murphine, all of Los Angeles, Cal., and John F. Reddy, Jr., of New York City, for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment obtained by appellee, Hagenbeck-Wallace Shows Company, an Indiana corporation, against appellant, Fanchon & Marco, Incorporated, a California corporation, in an action by appellee against appellant for breach of a contract whereby appellee, on May 22, 1939, leased to appellant for the term of five weeks commencing May 24, 1939, one circus train, 34 animals, 20 wagons and other equipment to be used by appellant in its operation of "The Great American Circus."

The contract provided that the leased property should be delivered to appellant by May 23, 1939, in good condition and ready for use; that appellee should procure a policy or policies of insurance insuring the property against fire and other risks; that appellant should pay appellee the amount of premium (not exceeding $300) charged for such insurance; and that the rental of the property should be $12,-500, payable as follows: $2,500 in cash on delivery of the property, the balance in four promissory notes of appellant for $2,500 each, payable May 31, 1939, June 7, 1939, June 14, 1939, and June 21, 1939, respectively, such notes to be delivered to appellee on delivery of the property to appellant.

The property was delivered to appellant on May 23, 1939, but appellant never paid the agreed rental on any part thereof, nor did appellant make or deliver any note to appellee. On May 31, 1939, appellant returned the property to appellee and delivered to appellee a notice stating that appellant thereby rescinded the contract of May 22, 1939. The notice further stated: "This rescission is made on the ground that the consideration for this obligation [1] has failed in a material respect, and particularly because the equipment set forth in [the contract] was not at the time of the delivery of said equipment to [appellant], or now, in proper form or order to use in the manner for which it was intended to be used, and such use up to date has been had only by the expenditure of large sums of money by [appellant]."

Appellee commenced this action on November 10, 1939. The complaint [2] set out the contract, alleged appellee's performance and appellant's breach thereof, and alleged that, in consequence of the breach, appellee had been damaged in the sum of $14,-475.14, itemized as follows: (1) Expense of feeding and caring for the leased animals for a period of four weeks,[3] $1,600; (2) insurance premium alleged to have been paid by appellee, $66; (3) agreed rental of the leased property, $12,500; (4) interest on said rental to November 10, 1939, $309.-14. The prayer of the complaint—due, obviously, to an error in addition—was that appellee have judgment for $15,475.14, but the complaint stated no claim for that amount. The amount actually claimed was $14,475.14.

Answering, appellant admitted execution of the contract, but denied performance thereof by appellee; pleaded the at-

---

1 Appellant's obligation under the contract.

2 The complaint was in three counts. The court, however, on November 25, 1940, entered an order dismissing counts 2 and 3. That order was not appealed from. Therefore counts 2 and 3 may be, and are here, disregarded.

3 From May 31, 1939, to June 28, 1939.

tempted rescission of May 31, 1939; alleged that the leased equipment was not in good condition and ready for use when delivered to appellant, but was defective and badly in need of repairs; alleged that appellant had expended $2,500 for such repairs and had been damaged in the sum of $50,000 by appellee's non-performance of the contract; and, by way of counterclaim, prayed judgment against appellee for $52,500. Jury trial having been waived, the court tried the case, made and filed its findings of fact and conclusions of law and, on December 3, 1940, entered judgment in favor of appellee. This appeal followed.

The court found that the expense of feeding and caring for the leased animals from May 31, 1939, to June 28, 1939, was $1,600, as alleged in the complaint, but concluded that appellee was not entitled to recover that amount or any part thereof. Since appellee has not appealed, this conclusion is accepted as correct.

There was no finding, nor any evidence warranting a finding, that appellee expended $66 or any other sum for insurance of the leased property. There was, therefore, no basis for awarding that sum or any part thereof to appellee.

The court found that the leased equipment was in good usable condition when delivered to appellant, but that some of it was in need of repairs; that, prior to its delivery, appellant saw and examined the equipment and knew its condition; and that, having such knowledge, appellant accepted delivery of the equipment, had the necessary repairs made and, with appellee's consent, charged the expense thereof ($1,511.77)[4] to appellee. These findings are amply supported by evidence and will not be disturbed.

The court concluded that when appellant, knowing the condition of the equipment, accepted delivery thereof, had the necessary repairs made and, with appellee's consent, charged the expense thereof to appellee, appellant waived "reconditioning" of the equipment—meaning, obviously, that appellant waived the right to demand that the equipment be repaired or "reconditioned" before delivery. This conclusion was clearly correct.

The equipment delivered to appellant included a certain rope which subsequently was broken while being used by appellant. Witnesses for appellant testified that the rope was "dry-rotted." No part of the rope was produced in evidence. The court remarked that its non-production "would indicate the contrary idea to the dry rot." Apart, however, from any inference the court may have drawn from the non-production of the rope, the finding that all the equipment, including the rope, was in good condition when delivered to appellant was amply warranted. We therefore need not consider appellant's contention that the inference drawn by the court was improper.

One of the leased wagons had a "hot box"—an overheated spindle—while being used by appellant. The court observed that there was no evidence that the wagons had been greased or oiled since their delivery to appellant. There was evidence, however, that after one overheating, the spindle in question was greased and shortly thereafter was again overheated. This may or may not have resulted from improper or inadequate lubrication. Whatever its cause, it does not require a rejection of the court's finding that all the equipment, including this wagon, was in good condition when delivered to appellant. We therefore need not consider appellant's contention that, in the absence of evidence, the court should have presumed that the spindle had been greased.

Appellant complains of the admission of testimony of Patrick Graham, J. V. Austin and Paul Eagles, witnesses for appellee, regarding the condition of the wagons when delivered to appellant. Graham testified that the wagons were in good condition. Austin testified that they looked to him to be usable. Eagles testified that they were "in such condition as used circus wa-

---

[4] Appellant claimed to have expended for repairs $1,672.40. See appellant's exhibit 16 (Transcript, pp. 178, 186–187). The court, however, disallowed items aggregating $160.63 (Transcript, p. 46). The disallowed items were:

| | |
|---|---|
| Rental of stake driver, | $20.00 |
| Garbage cans and hammer, | 5.03 |
| Truck hire to Ted Ducey, | $61.25 |
| Dining car equipment, | 15.93 |
| Blacksmith equipment, | 22.66 |
| 120 yards of burlap | 24.72 |
| Tools, | 11.04 |
| Total, | $160.63 |

gons would normally be in at such a time." Regarding an accident to one of the wagons, Eagles testified that such an accident could be caused by "wrong turning" if the driver did not handle the pole of the wagon properly. All this testimony was objected to as being opinion testimony. The objection was not well taken. The witnesses were circus men of many years' experience, and their testimony (if not otherwise admissible) was admissible as expert testimony.

Appellant says the court erred in "concluding that appellant closed the circus because threatened with a closed shop by labor unions." The court stated no such conclusion. The court did, however, allude to the fact—which is undisputed—that, on May 31, 1939, before attempting to rescind its contract with appellee, appellant sent fourteen telegrams each of which stated, in substance, that appellant was closing the circus because of labor difficulties. Whether the telegrams were true or false need not be decided; for, regardless of their truth or falsity, the attempted rescission was unwarranted and ineffectual.

The complaint alleged and the answer denied that, after appellant returned the leased property, appellee "made every endeavor during the remainder of the term of said contract to let said property to others, but was unable to do so." By a pretrial order [5] dated November 25, 1940, this issue was excluded from the case, thus obviating the need of a finding thereon. There is, therefore, no merit in appellant's contention that, for lack of such a finding, the judgment should be reversed.

From the foregoing it is clear that appellee should have had judgment for $988.23,[6] with 7% interest[7] from May 23, 1939;[8] $2,500, with 7% interest from May 31, 1939; $2,500, with 7% interest from June 7, 1939; $2,500, with 7% interest from June 14, 1939; and $2,500, with 7% interest from June 21, 1939—a total[9] of $12,129.34. Instead, the court gave appellee judgment for $15,006.07, an amount exceeding by $2,876.73 that which should have been awarded.

The judgment is modified by reducing the amount thereof from $15,006.07 to $12,129.34 and, as thus modified, is affirmed.

---

[5] Federal Rules of Civil Procedure, rule 16, 28 U.S.C.A. following section 723c.

[6] The first rental instalment ($2,500), less the sum ($1,511.77) which appellant expended for repairs.

[7] Deering's General Laws of California 1937, Act 3757, § 1.

[8] The first rental instalment was payable on delivery of the leased property, May 23, 1939. The others were payable on May 31, 1939, June 7, 1939, June 14, 1939, and June 21, 1939.

[9] As of the date judgment was entered, December 3, 1940.