Mrs. William (Betty) HELIS, Plaintiff-Appellee,

v.

Chester A. USRY, District Director of Internal Revenue, New Orleans District, Defendant-Appellant.

William G. HELIS, Jr., and Venus D. Helis, Plaintiffs-Appellees,

v.

Chester A. USRY, District Director of Internal Revenue, New Orleans District, Defendant-Appellant.

Nos. 71–2524, 71–2525.

United States Court of Appeals, Fifth Circuit.

July 5, 1972.

I.

Gerald J. Gallinghouse, U.S. Atty., Claude J. Aucoin, Jr., Asst. U.S. Atty., New Orleans, La., Johnnie M. Walters, Chief, Tax Division, Fred B. Ugast, Acting Asst. Atty. Gen., Scott P. Crampton, Gilbert E. Andrews, Meyer Rothwacks, David E. Carmack, Paul M. Ginsburg, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant; William T. Abbott, Asst. U.S. Atty., of counsel.

James G. Burke, Jr., Morris Wright, Harry McCall, Jr., Gibbons Burke, David A. Kerstein, New Orleans, La., for plaintiffs-appellees; Burke & Ballard, Chaffe, McCall, Phillips, Toler & Sarpy, Cobb & Wright, New Orleans, La., of counsel.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This is an appeal by the government from two tax refund suits consolidated for trial in the district court. The judgments below allowed Mrs. William (Betty) Helis, Sr., and her son, William G. Helis, Jr., to recover sums paid under deficiencies assessed against them by the Commissioner of Internal Revenue for income taxes. We affirm that part of the judgments concerning the Subchapter S treatment of a corporation in which taxpayers owned stock, but we reverse that part concerning deductions for alleged ordinary business expense of a partnership of which taxpayers were members.

## SUBCHAPTER S

Both taxpayers were shareholders in Helis Overseas, Inc. (Overseas). They deducted from their personal income tax returns their share of losses of the corporation on the theory that Overseas could be taxed under Subchapter S of the Internal Revenue Code of 1954, § 1371 et seq., so that the shareholders would be treated as partners for income tax purposes. As such, they would be entitled to the deduction which the government disallowed.[1] The government contended that the election of Overseas to be treated as a small business corporation under Subchapter S was terminated in 1963 under § 1372(e)(4) because it derived more than 80% of its gross receipts from sources outside the United States.[2] The argument centered upon the proper treatment to be given certain transactions that occurred outside the United States which the government says generated gross receipts. The district court held that the transactions were non-taxable exchanges under 26 U.S.C. § 1031(a) and did not constitute gross receipts under 26 C.F.R. § 1.372-4(IV). ("However, gross receipts does not include amounts received in non-taxable sales or exchanges . . . except to the extent that gain is recognized by the corporation . . . .").

The district court found as a matter of fact that the property held for productive use in the business of oil exploration and development was exchanged for other property which was held for productive use in the same business. The court's findings not being clearly erroneous, we affirm the Subchapter S

---

1. The deductions were substantial:

| | 1963 | 1964 |
|---|---|---|
| Mrs. William Helis, Sr. | $147,613.78 | $130,256.73 |
| William G. Helis, Jr. | $147,613.78 | $130,256.73 |

2. Internal Revenue Code, § 1372(e)(4):
"Foreign income.—An election under subsection (a) made by a small business corporation shall terminate if for any taxable year of the corporation for which the election is in effect, such corporation derives more than 80 percent of its gross receipts from sources outside the United States. Such termination shall be effective for the taxable year of the corporation in which it derives more than 80 percent of its gross receipts from sources outside the United States, and for all succeeding taxable years of the corporation."

part of the district court's Findings of Fact and Conclusions of Law.[3]

## II.

## PARTNERSHIP BUSINESS EXPENSE

In 1938 the late William G. Helis, Sr. established an office in Athens through which he conducted activities in exploring for oil, gas and related minerals under a concession given him by the Greek government. The concession gave Helis the exclusive right to undertake such explorations and exploitation in Greece. Drilling operations were commenced in Greece in 1939 and continued until war forced the discontinuance of all civil matters in 1940. Efforts to resume operations after the war were prevented by export restrictions of the United States, by civil war in Greece, and by the death of Helis, Sr. in 1950.

In 1953 Helis European Operations (European Operations) was established as a partnership to continue the operations. Personnel and a modern drilling rig were sent to Greece and drilling commenced in August, 1953. However, no oil or gas deposits of commercial significance were discovered. The original concession that was given to Helis, Sr. expired on September 30, 1953. Although drilling continued for a time during the negotiations for an extension of the concession, the drilling rig was disposed of by taxpayers in 1958.

After suspension of the drilling operations in 1955, the Athens office pursued administrative and legal relief relative to an extension of the concession and kept taxpayers informed of political, geophysical, and mineral activities of other companies in Greece as well as in the Middle East, the Balkans, and the Mediterranean area. Such information was relayed to the partnership at its New Orleans office. In addition to these activities during the taxable years

in question, the Athens office was used to entertain prominent persons in the Greek government, the Greek Royal Family, the American Ambassador to Greece and other ambassadors, prominent American industrialists, and American senators who visited Greece. In performing these activities the Athens office paid out considerable sums, all of which taxpayers sought to deduct as ordinary and necessary business expenses of European Operations.

The critical question before us is whether taxpayers have met their burden of demonstrating with some substantiality that the claimed expenses are deductible. Williams v. United States, 245 F.2d 559 (5th Cir. 1957). Whether the outlays be for administration, for travel, or for entertainment, for them to be deductible the taxpayers must show that they are ordinary and necessary business expenses incurred by European Operations for its trade or business.

Taxpayers introduced vouchers representing expenses undertaken in 1961 and 1962. These vouchers state "for local transportation expenses and entertainments of visitors from abroad specialists guest of the enterprises." The balance of the documentary evidence for all the years in question consists of the Athens office cash disbursements and the charter for a boat during a trip to Greece by one of the taxpayers in 1962. This evidence shows expenditures for salaries of the Athens office personnel, for entertainment, for office supplies, for geological reports, for translation, and for similar items. However, no specific outlay was directly attributed to European Operations' trade or business either in the documentary or testimonial evidence.

■■ Some of the expenses were related to taxpayers' attempt to secure a concession to explore for gas and oil in Greece. Such a concession, being in the nature of a lease, is a capital asset, the

---

3. There is no merit to the government's argument that the judgment should be reversed because the court made no finding on the rent issue, which was not raised in the pretrial order. Fanchon & Marco v. Hagenbeck-Wallace Shows Co., 125 F.2d 101 (9th Cir. 1942).

acquisition expenses of which must be capitalized with the asset.[4] Woodward v. Commissioner of Internal Revenue, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970). Taxpayers made no showing as to the expenses of the Athens office which were directly related to their attempts to acquire a new concession from the Greek government.

Finally, taxpayers are involved in oil and gas ventures other than through European Operations. For taxpayers to be able to deduct the expenses of European Operations as ordinary and necessary, those expenses must relate directly to European Operations' trade or business. But in at least one instance the Athens office was used to the benefit of another of taxpayers' ventures.[5] Presumably, costs and expenses were incurred by the Athens office in handling the venture. Such costs and expenses would not be necessary and ordinary to European Operations' trade or business. However, taxpayers have not shown which of the Athens office expenses were directly related to the other venture.

In short, we hold that the taxpayers have not met their burden of proof in showing that all of the expenses of the Athens office were (1) necessary and ordinary business expenses of European Operations, and (2) expenses not involved in the acquisition of a capital asset.

We, therefore, reverse that portion of the judgment below and remand for reconsideration in the light of this opinion.

Affirmed in part and reversed and remanded in part.

---

4. Although the Greek government has offered a concession to taxpayers extending the original concession, they have not executed it because of certain terms contained therein which they find to be disadvantageous. Under an article entitled "Duration of Lease" the document refers to the "lease" as being for a term of fifty years. It is clear that such a lease is a capital asset. Main & McKinney Bldg.

---

Co., of Houston, Tex. v. Commissioner of Int. Rev., 113 F.2d 81 (5th Cir. 1940), cert. den. 311 U.S. 688, 61 S.Ct. 66, 85 L.Ed. 444 (1940).

5. The Tunisian oil venture of Helis Overseas, Inc.—the subject matter of point one of this appeal—was handled partly through the Athens office.